**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

| | |
|---|---|
| TERRY JONES, ) | |
| ) | |
| Plaintiff ) | |
| ) | Case No. 2:11-CV-94 |
| ) | |
| v. ) | Chief District Judge John Preston Bailey |
| ) | Magistrate Judge James E. Seibert |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Defendant ) | |
| ) | |

## <u>JOINT PRETRIAL ORDER</u>

Pursuant to L.R. Civ. P. 16.04(b) and this Court's Third Amended Scheduling Order (Dkt. 74) and Order Granting Defendant's Unopposed Motion For 14-Day Extension of Pretrial Disclosure Deadlines (Dkt. 143), the parties, by counsel, submit the following Joint Pretrial Order.

## I.    PLAINTIFF'S 26(A)(3) DISCLOSURES

Plaintiff will or may call the following witnesses[1] at trial:

1. Mr. Terry Jones (by deposition or by live testimony)[2]

2. Mr. David LeMaster (by deposition or by live testimony)

3. Mr. Michael Lynch (by deposition or by live testimony)

4. Mr. Joseph Micieli (by deposition or by live testimony)

5. Mr. Hiromichi Kobayashi (by deposition or by live testimony)

---

[1] By agreement of the parties, Plaintiff has noticed depositions of two witnesses on Defendant's witness list: Dr. Inerio Alarcon (December 20, 2013) and Ms. Patricia Corbin (January 6, 2014).

[2] The defense has stated it plans to bring all witnesses live, and has agreed to also provide those live witnesses for the plaintiff's case in chief. The plaintiff reserves the right to present the witnesses by deposition if they are unavailable for trial for any reason.

6. Mr. William Hopzafel (by deposition or by live testimony)

7. Mr. Erik Smith (by deposition or by live testimony)

8. Mr. Jason Shaw (by deposition or by live testimony)

9. Ms. Anndreea Shorter (by deposition or by live testimony)

10. Dr. Rasim Oz (by deposition or by live testimony)

11. Dr. Gregory J. Przybylski (by live testimony)

12. Dr. J. Gregory Rosencrance (by live testimony)

13. Ms. Nancy Bond (by live testimony)

14. Mr. Robert Jackson (by deposition)


Plaintiff's Exhibit List:

1.  BOP Report on December 21, 2007 Attack - USINV2-13

2. Investigative Case File for BOP Report - USINV24-321

3. USP Hazelton Daily Assignment Roster for Dec. 21, 2007 - USINV 325-32

4. LeMaster Memo on December 21, 2007 Attack - USINV322

5. Shorter Hand Drawn Diagram of B Unit Crossover Hallway

6. LeMaster Hand Drawn Diagram of B-2 unit

7. Lynch Hand Drawn Diagram of B-2 unit

8. Lynch Hand Drawn Diagram of USP Hazelton Housing Units

9. Standards of Employee Conduct, No. 3420.09

10. Inmate Discipline, BOP PS No. 5270.07 - USPOL1095-1228

11. Inmate Discipline, BOP PS No. 5270.09

12. May 2, 2006 Medical Record - USMED1304

13. December 26, 2007 Medical Record - USMED1293

14. March 7, 2008 Medical Record - USMED1296-97

15. March 24, 2008 Medical Record - USMED1358

16. April 6, 2008 Inmate Request to Staff Form - USMED1291

17. April 7, 2008 Medical Record - USMED1294-95

18. April 8, 2008 X-Ray Reports - USMED1313-15

19. April 8, 2008 X-Rays - USMED1496-1498

20. April 8, 2008 X-Ray - USMED1786

21. April 8, 2008 X-Ray - USMED1787

22. April 8, 2008 X-Ray - USMED1788

23. April 8, 2008 X-Ray - USMED1789

24. April 8, 2008 X-Ray - USMED1782

25. April 8, 2008 X-Ray - USMED1785

26. April 8, 2008 X-Ray - USMED1783

27. April 8, 2008 X-Ray - USMED1784

28. April 9, 2008 Medical Record - USMED1316

29. June 5, 2008 Letter and Envelope - USMED1326, 1329

30. July 10, 2008 Medical Record - USMED1357

31. August 25, 2008 Request for Administrative Remedy - TJ608-09

32. October 31, 2008 Request for Administrative Remedy - USMED50

33. October 31, 2008 Request for Administrative Remedy - TJ492-494

34. November 3, 2008 Medical Record - USMED9-12

35. November 4, 2008 Medical Record - USMED1290

36. November 4, 2008 X-Ray Report - USMED49

37. Declartion of Troy Allen - USLIT68-69

38. Inmate Transfer History - USLIT65-67

39. November 5, 2008 Medical Records - USMED1340-42

40. November 7, 2008 Medical Record - USMED20-24

41. November 17, 2008 Letter - TJ503

42. November 24, 2008 Medical Record - USMED5-7

43. November 24, 2008 Medical Report - USMED38

44. 2008 Pharmacy Records - USMED40-45

45. December 14, 2008 Medical Record - USMED3-4

46. Dec 2008 to Feb 2009 Administrative Remedy Documents - USLIT2-11

47. Medical Consultations Report - TJ1800-01

48. January 5, 2009 Letter to BOP Medical Director - TJ675-76

49. February 12, 2009 Medical Record - USMED285-86

50.  March 11, 2009 Medical Records - USMED478-79

51. March 11, 2009 Medical Record - USMED283-84

52. March 11, 2009 X-Ray Report - USMED1262-63

53. March 11, 2009 MRI Report - USMED1255-56

54. March 11, 2009 X-Ray Report - USMED1242-43

55. March 11, 2009 X-Ray Report - USMED1240-41

56. March 11, 2009 CT Report - USMED1236-37

57. March 11, 2009 CT Report - USMED1229-30

58. March 11, 2009 MRI Report - USMED1227-28

59. March 11, 2009 History and Physical - USMED1231-33

60. March 12, 2009 Consultation - USMED1266-67

61. March 13, 2009 X-Ray Report - USMED1245

62. March 13, 2009 Operative Report - USMED1272-74

63. March 31, 2009 Discharge Summary - USMED1276-78

64. March 2009 St. Mary's Hospital Reports - TJ353-389

65. 2009 Pharmacy Records - USMED431-41

66. December 16, 2010 Medical Record - USMED491-92

67. 2010 Pharmacy Records - USMED705-722

68. 2011 Pharmacy Records (Jan 2011-Nov 2011) - USMED926-933

69. 2011 Pharmacy Records (Sept 2011-Jan 2012) - USMED1437-41

70. January 13, 2011 MRI Report - USMED1714

71. September 15, 2011 MRI Report - USMED960-61

72. September 29, 2011 MRI Report - USMED800-02

73. December 13, 2011 Medical Report - USMED1369-72

74. 2011-2012 Colonial Orthopaedics Records - TJ1829-42

75. January 5, 2012 Medical Report - USMED1364

76. July 19, 2012 MRI - USMED1493-94

77. August 2, 2012 CT Report - USMED01668-69

78. August 4, 2011 CT Report - USMED1484-86

79. U.S. Life Expectancy Tables - TJ3035-98

80. Picture of Walker

81. Trial Stipulation No. 1 - Authenticity

82. Terry Jones Release Date - TJ1813

83. Declaration of Charleston Iwaugwu

84. Declaration of Cindy Hein

85. Dr. Gregory Przybylski Expert Report

86. Dr. J. Gregory Rosencrance Expert Report

87. Nancy Bond Expert Report

88. Robert Jackson Expert Report

## II.     DEFENDANT'S 26(A)(3) DISCLOSURES

Defendant's Proposed Witness List:

1.   Mr. Terry Jones
FCI Petersburg

2.   Mr. Hiromichi Kobayashi
Supervisory Intelligence Officer/BOP
2880 Sunrise Blvd, Suite 202
Rancho Cordova, CA 95742

3.   Mr. Jason Shaw
USP Hazelton
304-379-5000

4.   Mr. Erik Smith
Correctional Officer
USP Hazelton
304-379-5000

5.   Lt. William Holzapfel
USP Hazelton
304-379-5000

6.   Mr. David LeMaster
Unit Manager – USP Hazelton
304-379-5000

7.   Dr. Inerio Alarcon, MD
FCI Miami
15801 S.W. 137th Avenue
Miami, FL 33177
305-259-2100

8.   Ms. Patricia Corbin, PA-C
FCI Morgantown
446 Greenbag Road, Route 857
Morgantown, WV 26501
304-296-4416

9.   Dr. Rasim Oz, MD
WellSpan Radiology
35 Monument Rd., Suite 201
York, PA 17403
717-812-3712

10.  Ms. Anndreea Shorter
USP Hazelton
304-379-5000

11.  Mr. Michael Lynch
Unit Officer – USP Hazelton
304-379-5000

12.  Dr. Jack E. Willberger, Jr. MD
Allegheny General Hospital
Department of Neurology
East Wing Office Building
420 East North Avenue, Suite 302
Pittsburgh, PA 15212


Defendant's Exhibit List:

Exhibit 1:      Bureau of Prisons Program Statement 3420.09

Exhibit 2:      Amended Threat Assessment, dated March 31, 2008
                (Bates numbers USINV2 – 13)

Exhibit 3:      Selected Medical Records from May 2, 2006 through November 3, 2008
                (non-sequential Bates Nos.)

Exhibit 4:      Selected Medical Records from November 8, 2008 through March 13, 2009
                (non-sequential Bates Nos.)

Exhibit 5:      Correspondence from Dr. Jack E. Wilberger, Jr., M.D., dated May 2, 3013
                (Bates numbers USMED1728-1733)

Exhibit 6:      Curriculum vitae of Dr. James "Jack" Eldridge Wilberger, M.D.
                (Bates numbers USMED1734 – 1772)

Exhibit 7:      Presentence Report for Plaintiff Terry L. Jones
                (Bates numbers USHIST20 – 40)

Exhibit 8:      Correspondence from Robert W. Jackson, dated March 29, 2013

Exhibit 9:      Correspondence from Nancy J. Bond, dated March 15, 2013

Exhibit 10:     Correspondence from J. Gregory Rosencrance, M.D., dated March 29, 2013

Exhibit 11A:   Correspondence from Gregory J. Przybylski, MD, dated March 28, 2013

Exhibit 11B:   Correspondence from Gregory J. Przybylski, MD, dated May 15, 2013


## III.  CONTESTED ISSUES OF LAW REQUIRING A RULING BEFORE TRIAL

### A.     Plaintiff

At this time, Plaintiff sees no issues of law requiring a pre-trial ruling.

### B.     Defendant

At the time of the filing of this Joint Pretrial Order, the United States is not aware of any contested issues of law.  The United States reserves the right to identify and raise contested issues of law after it has had an opportunity to thoroughly review plaintiff's witness and exhibit lists.


## IV.  STATEMENT OF ESSENTIAL ELEMENTS AND DEFENSES

### A.     Plaintiff's Statement Regarding His Claims

Plaintiff Terry Jones seeks damages against the United States for the Bureau of Prisons' (BOP) negligent failure to: 1) protect Mr. Jones during a December 2007 attack on the B-2 Unit at USP Hazelton; 2) properly diagnose and treat Mr. Jones's injuries after the December 2007 attack while he was incarcerated at USP Hazelton; and 3) properly diagnose and treat Mr. Jones's injuries after the December 2007 attack while he was incarcerated at USP Tucson.

Under West Virginia law, Plaintiff must prove three elements to establish that the Defendant is liable for negligent failure to protect: (1) a duty that the defendant owes the plaintiff; (2) a negligent breach of that duty; and (3) injuries received as a proximate result of

that breach.  *Webb v. Brown & Williamson Tobacco Co.*, 2 S.E.2d 898, 899 (W.Va. 1939).  The

plaintiff must prove each of these elements by a preponderance of the evidence.  *Id*. at 899.  The

BOP must "exercise [ ] ordinary diligence to keep [Jones] safe and free from harm."  *Jones v.*

*United States*, 534 F.2d 53, 54 (5th Cir. 1976) (defining duty of care owed to federal prisoners

under 28 U.S.C. § 4042).

That duty is consistent with the relevant state medical-malpractice laws, under which the

BOP's health care providers owed Jones "that degree of care, skill and learning required or

expected of a reasonable, prudent health care provider in the profession or class to which the

health care provider belongs acting in the same or similar circumstances[.]"  W. VA. CODE § 55-

7B-3(a)(1); ARIZ. REV. STAT. § 12-563(1) (same).  To prove a breach of duty in a medical

malpractice claim, a party must use expert testimony to show that the treating physician deviated

from the standard of care.  W. VA. CODE § 55-7B-7; *see Seisinger v. Siebel,* 220 Ariz. 85, 94

(2009) (en banc); *Potter v. H. Kern Wisner, M.D., P.C.*, 170 Ariz. 331, 333 (Ariz. App. 1991).

In addition to proving duty and breach of duty, the medical malpractice plaintiff in West

Virginia and Arizona must prove the defendant proximately caused his injury. W. VA. CODE

§ 55-7B-3(a)(1); ARIZ. REV. STAT. § 12-563(1) (same). If a plaintiff can prove that a delay in

treatment caused the injury alleged, and that a delay in treatment fell below the standard of care,

"when read together they constitute evidence that the [plaintiff] can present to a jury

demonstrating that [the defendant] violated the standard of care and that such violation was a

cause of the [plaintiff's] injury."  *Estate of Fout-Iser ex rel. Fout-Iser v. Hahn*, 649 S.E.2d 246,

252 (W. Va. 2007) (delay in ordering proper tests and ultra sound caused delay in emergency

cesarean section resulting in baby's death).

Finally, the medical malpractice plaintiff must prove that the defendant's breach of duty damaged him. W. VA. CODE § 55-7B-3(a)(1); ARIZ. REV. STAT. § 12-563(1) (same). "It is well settled that an injured plaintiff may recover damages for pain and suffering caused by the negligence of the defendant." *Delong v. Kermit Lumber & Pressure Treating Co.*, 175 W. Va. 243, 244 (1985). "To form a legal basis for recovery of future permanent consequences of the negligent infliction of a personal injury, it must appear with reasonable certainty that such consequences will result from the injury; contingent or merely possible future injurious effects are too remote and speculative to support a lawful recovery." *Jordan v. Bero*, 158 W. Va. 28, 29 (1974); *see Cook v. Cook*, 216 W. Va. 353, 359 (2004) (affirming the *Jordan* standard). Briefly, then, the plaintiff must demonstrate "[t]he permanency or future effect of any injury." *Id*. at 29.

### B.     Defendant's Statement of Essential Elements Which Must Be Proved to Establish Meritorious Defenses

In this case, the plaintiff alleges at Count I that Bureau of Prisons ("BOP") staff at USP Hazelton in Bruceton Mills, West Virginia negligently failed to protect Plaintiff from harm which Plaintiff alleges occurred while he was fleeing an inmate fight within his housing unit. Counts II and III allege medical malpractice against health care providers at Bureau of Prisons institutions USP Hazelton and USP Tucson respectively. Count IV has been dismissed from the case by stipulation between the parties. Plaintiff claims that the alleged medical negligence is the proximate cause of his injuries. The defendant denies any negligence as to all three remaining counts. The defendant further denies that any act or omission on its part was the proximate cause of any of plaintiff's injuries.

The defendant's defense in this case is factual in nature. Further, the plaintiff bears "the burden of proof to show an unequivocal waiver of sovereign immunity exists and to show that" the discretionary function exception does not apply. Usry v. United States, 2013 WL 1196650

10

(N.D.W.Va., 2013), citing <u>LeRose v. United States</u>, 285 F. App'x 93, 96; <u>see also Welch v. United States</u>, 409 F.3d 646 (4th Cir.2005).  If the BOP employees' conduct involved discretion, and the decision itself was grounded in public policy, the exception applies, even if the decision made was an abuse of discretion. <u>Usry</u>, at *5, citing <u>Palay v. United States</u>, 349 F.3d 418, 428 (7th Cir.1995); 28 U.S.C. § 2680(a).  That is, if the decision made is a discretionary one, and no mandatory duties were breached, "whether the government was in fact negligent is irrelevant to the analysis." <u>Hylin v. United States</u>, 755 F.2d 551, 553 (7th Cir.1985).

Without shifting the burden of proof, the defendant must demonstrate that the United States was not negligent in its protection of plaintiff as alleged in Count I; that the BOP health care providers did not violate the standard of care within the meaning of W.Va. Code □55-7B-3(a)(1) as to Count II; and that the BOP health care providers did not violate the standard of care within the meaning of  Arizona Revised Statutes Section 12-563 as to Count III.

In the alternative, the defendant must show that any violation of the standard of care was not the proximate cause of Plaintiff's injuries within the meaning of W.Va. Code §55-7B-3(a)(2) and *see Mays v. Chang*, 579 S.E. 2d 561 (W.Va. 2003) (Counts I and II) and/or Arizona Revised Statutes Section 12-563 (Count III).


## V.       BRIEF SUMMARY OF MATERIAL FACTS AND THEORIES OF LIABILITY

### A.       Plaintiff's Summary

On December 21, 2007, a violent inmate-on-inmate attack took place in USP Hazelton's Bravo-2 ("B-2") housing unit, where Mr. Jones was then housed. Armed with homemade knives, inmate Donte Evans and two other inmates from the Baltimore, Maryland area forced their way into B-2 unit and assaulted several inmates from the D.C. area. At 3:41 p.m. on the day of the attack, B-2 Unit Secretary Anndreea Shorter found a note outside the door separating the Bravo

unit staff offices from the B-1 housing unit. Shorter Dep. [Doc. 127 Ex. 3 at 157:13–17]. The note, written by an unidentified inmate, read as follows [sic throughout]:

> Ms. Shorter, give this to SIS or the LT ASAP. Donte Evans in B2 that just got caught with a knife has another one. He is about to start a DC Baltimore Beef so you need to get him off the compound ASAP. He beefing with a dude in his block. They tried to stop him but he don't listen to nobody. [Doc. 127 Ex. 2].

Ms. Shorter claims to have called SIS and read the note aloud to an SIS staff member, who asked Shorter to bring the note to the SIS office. None of the SIS staff members present on December 21, 2007, however, remembers receiving Shorter's call. Each of them testified that if he had received such a warning, he would have responded immediately, by calling the Lieutenant on duty, having Donte Evans brought to the SIS office, or going down to get Evans himself. Before Ms. Shorter reached the SIS office, the attack began in the B-2 unit. During the attack, Mr. Jones slipped and fell on blood while running away from an armed inmate, hitting his back and neck on a metal staircase. Mr. Jones's injuries resulted from the negligence of BOP personnel, who—in violation of mandatory BOP directives—did not act effectively and immediately to prevent the attack.

The BOP is liable for damage to Mr. Jones under the Federal Tort Claims Act (FTCA), a limited waiver of the United States' sovereign immunity. 28 U.S.C. § 2674. In relevant part, the FTCA renders liable federal employees acting within the scope of their employment, whose non-discretionary actions result in the commission of certain torts. Here, BOP personnel's failure to act effectively and immediately to protect Mr. Jones renders the United States liable for the damage Mr. Jones suffered during and after the attack.

Over the fourteen months following the attack, Mr. Jones sought treatment repeatedly from BOP medical staff at both USP Hazelton and USP Tucson, complaining of numbness,

tingling in extremities, and pain in his back and neck.  In March 2009, Mr. Jones collapsed while walking in the recreation yard at USP Tucson and was rushed to a nearby hospital; after an MRI revealed severe compression damage to Mr. Jones' spinal cord, he underwent emergency spinal decompression surgery.  Mr. Jones had another spinal surgery in 2013.

Mr. Jones suffers from ongoing pain and neurologic deficits as a result of the injuries BOP failed to prevent and failed to diagnose and treat. When a patient presents with symptoms of spinal cord injury, as Mr. Jones did, the standard of care requires an MRI and full neurological exam after 8-12 weeks of conservative measures. The BOP, in violation of the standard of care, treated Mr. Jones's injuries with conservative measures for 14 months, never providing an MRI or full neurological exam. Consequently, Mr. Jones's once-treatable injuries worsened, and eventually became permanent.  BOP's failure to diagnose and treat is malpractice under both West Virginia and Arizona state law.

### B.    Defendant's Summary of Material Facts and Theories of Defense

On December 21, 2007, the Plaintiff Terry Jones was a Federal inmate incarcerated at USP Hazelton in Bruceton Mills, West Virginia.  Shortly before 4:00 PM on December 21, 2007, unit secretary Anndreea Shorter found a note left by an inmate in the B-1 housing unit that inmate Dante Evans, of the B-2 housing unit had knife.  Ms. Shorter used her radio  and then a telephone to alert Hazelton's Special Investigative Services ("SIS") of the note.  Ms. Shorter read the note to whoever answered the phone in the SIS department.  The individual in SIS advised Ms. Shorter to walk the note to SIS.  As Ms. Shorter was walking to SIS with the note in hand, an unknown inmate yelled, "It's too late.  They're already in the corridor."  Ms. Shorter continued on her way to SIS.  The alarm then sounded that a fight was in progress in the B-2 unit.  Ms. Shorter turned around and returned to the B-2 Unit to assist as needed.

Inmate Dante Evans and two other inmates entered the B-2 unit with homemade weapons

and began stabbing inmates.  Plaintiff Jones alleges he was on the top tier of the unit when Evans entered B-2.  Plaintiff Jones alleges he fell and was injured while trying to escape from the assault.  Plaintiff Jones alleges that from December 21, 2007 until November 4, 2008, the medical staff at Hazelton failed to diagnose and identify his injuries; failed to treat his injuries; ignored [his] repeated requests for testing and treatment, and placed him in conditions which exacerbated and worsened his injuries.  The United States' theory of defense is that the BOP staff employed at USP Hazelton did not breach their duty to plaintiff either at Count I or Count II.

On November 7, 2008, plaintiff arrived at USP Tucson, as the result of a transfer to participate in a newly developed sex offender treatment program.  Plaintiff claims that from November 7, 2008 until March 11, 2009, BOP staff employed at USP Tucson failed to diagnose and identify his injuries; failed to treat his injuries; ignored [his] repeated requests for testing and treatment, and placed him in conditions which exacerbated and worsened his injuries.  The United States' theory of defense is that the USP Tucson medical staff did not breach their duty to plaintiff as alleged in Count III.

## VI.    CONTESTED ISSUES OF FACT

1.)   Whether BOP responded immediately and effectively to the warning note Ms. Shorter received in advance of the December 21, 2007 attack on the B-2 unit.

2.)   Whether BOP staff breached any duty to plaintiff as alleged in Count I.

3.)   If liability is established as to Count I, whether defendant's acts or omissions were the proximate cause of Plaintiff's resulting injury.

4.)   Whether before December 2007, Mr. Jones was able to engage in normal physical activities.

5.)   Whether, when a patient reports with pain and neurological symptoms such as numbness, tingling sensation, weakness, and gait and limb impairment, the standard of care requires a complete medical history and a full neurological exam.

6.)   Whether, when a patient presents with pain and neurological symptoms, as did Mr. Jones, the standard of care allows for no more than 8 – 12 weeks of conservative management of his condition before an MRI and full neurological exam is required.

7.)   Whether, if a patient presenting with pain and neurological symptoms, like Mr. Jones, does not improve after 8-12 weeks of conservative management, the patient should receive an orthopedic or neurologic consultation, and appropriate diagnostic imaging like and EMG or MRI.

8.)   Whether, while at USP Hazelton after December 21, 2007, the BOP staff members did not take medically appropriate action to address Mr. Jones's complaints of pain and neurological symptoms.

9.)   Whether, while at USP Tucson before March 9, 2009,  the BOP staff members did not take medically appropriate action to address Mr. Jones's complaints of pain and neurological symptoms.

10.)  Whether BOP physicians violated the standard of care, within the meaning of W.Va. Code §55-7B-3(a)(1) and/or Arizona Revised Statutes Section 12-563. (Counts II and III).

11.)  Whether the failure of the BOP medical staff to provide medically appropriate treatment, despite Mr. Jones's persistent symptoms, and repeated and progressive

complaints, caused Mr. Jones to sustain a permanent spinal cord dysfunction that should have been avoided.

12.)     Whether any violation of the standard of care was the proximate cause of plaintiff's injuries within the meaning of W.Va. Code §55-7B-3(a)(2) and/or Arizona Revised Statutes Section 12-563.

13.)     Whether Mr. Jones will continue to be impaired in physical tasks, such as those requiring balance, climbing, repeated reaching or lifting, prolonged sitting, prolonged walking, and fine hand dexterity.

14.)     Whether Mr. Jones will have future medical expenses totaling $405,341 over Mr. Jones's expected lifetime, as described below in Section IX.

15.)     Whether Mr. Jones will be unable to gain employment that he otherwise could have obtained but for spinal injury, as described below in Section IX.

16.)      Whether Mr. Jones has experienced significant pain and suffering from December 2007 through the present, and will continue to experience pain and suffering into the future, as described below in Section IX.

17.)     If liability is established as to any count, the amount of economic damages resulting from plaintiff's injuries.

## VII.    CONTESTED ISSUES OF LAW

### A.     Plaintiff's Contested Issues of Law

1.)     Whether the Defendant may not argue or present evidence at trial that the plaintiff did not fall during the attack at USP Hazelton on December 21, 2007, or that the fall could not have resulted in the plaintiff's injuries.

2.)     Whether, for Count II, the United States can invoke the non-economic damages cap under West Virginia law in light of the provision that the limitation on non-economic damages is "not available to any defendant in an action pursuant to this article which does not have medical professional liability insurance in the amount of at least one million dollars per occurrence covering the medical injury which is the subject of the action."  W.V. Code § 55-7b-8(d).

**B.      Defendant's Contested Issues of Law**

1.)     Whether the discretionary function exception applies to the allegedly negligent behavior of the staff at USP Hazelton as asserted in the plaintiff's complaint at Count I.

2.)     If liability is established as to Count II, the amount of non-economic damages resulting from Plaintiff's injuries,  more specifically, whether plaintiff's non-economic damages are limited to $250,000.00 pursuant to W.Va.Code 55-7B-8(a), because he has not suffered (1) wrongful death; (2) permanent and substantial physical deformity, loss of use of a limb or loss of a bodily organ system; or (3) permanent physical or mental functional injury that permanently prevents him from being able to independently care for himself and perform life sustaining activities.

**VIII.  STIPULATIONS**

1.)     The parties agree to stipulate to the authenticity of the medical records and financial records presented as evidence in the case.

3.)     All documents produced by Mr. Jones and the United States in this case are deemed authenticated.

4.)     All of Mr. Jones's medical records fall under Federal Rule of Evidence 803(6).

IX.     STATEMENT OF DAMAGES CLAIMED

**Future Medical Expenses**

As a 41-year-old black male, Mr. Jones has a life expectancy of 33.3 more years, such that he would be expected to live until age 74.  The life expectancy of a person, like Mr. Jones, with residual signs and symptoms of spinal cord injury but without paraplegia or quadriplegia is not expected to be reduced. Mr. Jones is scheduled to be released from prison on July 19, 2015, at the age of 43.

Mr. Jones's injuries will require lifelong medical care and treatment.  Mr. Jones will also need certain types of medical equipment, as well as physical assistance. Mr. Jones will incur significant costs for this medical care and treatment and for the equipment and physical assistance, which he otherwise would not have incurred had he not suffered a spinal injury due to the BOP's negligence. Mr. Jones future medical expenses total $405,341 over Mr. Jones's expected lifetime.

**Lost Earning Capacity and Lost Wages**

Had Mr. Jones not been injured, he would have needed to find employment upon release. Based on his education, background, and the nature of his criminal conviction, Mr. Jones would likely only have been able to take unskilled manual labor jobs such as in construction, landscaping, and cleaning.  A salary at the minimum wage in Washington, D.C. would pay $17,160 per year.  A salary at the average median wage for these types of jobs would pay $23,961 per year.  A salary at the average mean wage for these types of jobs would pay $26,406 per year. Mr. Jones would likely have received a salary between the minimum wage and the average median salary for the types of jobs for which he is qualified.  This would therefore result in a likely annual salary between $17,160 and $23,961.

Mr. Jones would likely have required six months to one year to find employment after being released.  Since Mr. Jones will be 43 years old when he is released, and accepting that it would have taken his one year to find a job, he likely would have been 44 when he started working. Mr. Jones's likely retirement age, per Social Security retirement ages, would have been between 62 and 67 years old.  He therefore would have had between 18 and 23 work years ahead of him.  Mr. Jones would likely have had to work for a number of years at the higher end of this range due to not having money saved or other assets with which he could support himself after he stopped working. Because of his physical condition as a result of his spinal injury, Mr. Jones will not be able to perform any of the unskilled manual labor jobs for which he is qualified.  He has therefore sustained a full loss of his earning capacity. Based on 23 remaining work years and the average median annual salary of $23,961, Mr. Jones would have received $551,103 from employment over the rest of his life but for his spinal injury.

**Pain and Suffering**

Mr. Jones has experienced significant pain and suffering from December 2007 through the present, and will continue to experience pain and suffering into the future. From December 2007 through March 2009, Mr. Jones experienced pain, weakness, limb impairment, and neurological deficiencies such as numbness, tingling, and burning sensation.  These problems continued after his surgery in March 2009 to the present, and Mr. Jones will experience them into the future due to the permanent nature of his injuries. Because he was physically weakened, Mr. Jones fears that other inmates might try to take advantage of or hurt him. Mr. Jones experiences embarrassment and a loss of dignity due to not being able to care for himself as he could before his injuries, including times where he was unable to feed himself, bathe, or use the restroom without assistance.

X.     **SUGGESTIONS FOR AVOIDANCE OF UNNECESSARY PROOF AND CUMULATIVE EVIDENCE**

The plaintiff and defendant will make every effort to stipulate to facts in order to avoid unnecessary proof and cumulative evidence.   Through stipulations and other agreements of counsel, the parties will make every effort to eliminate unnecessary or cumulative evidence.

XI.    **NEED FOR SPECIAL PROCEDURES**

Unless the Court directs otherwise, both the plaintiff and the defendant intend to use trial presentation software to display documentary evidence to the witnesses, parties and the Court.

XII.   **AN ESTIMATE OF TRIAL LENGTH**

The parties estimate the trial of this case will take 3 days.

XIII.  **A LIST OF ADDITIONAL MATTERS**

None.

This Joint Pretrial Order is approved this _____ day of _____, 201__.

December 13, 2013                                  Respectfully submitted,

                                                   */s/  William V. DePaulo_____*

                                                   William V. DePaulo, WVSB #995

                                                   William D. Wilmoth, WVSB #4075
                                                       william.wilmoth@steptoe- johnson.com
                                                   STEPTOE & JOHNSON, PLLC
                                                   1233 Main Street, Suite 3000
                                                   P.O. Box 751

Wheeling, WV 26003
Phone:  (304) 233-0000

Andrew R. Sommer, *pro hac vice*
   asommer@winston.com
Eric M. Goldstein, *pro hac vice*
   egoldstein@winston.com
Brian M. Serafin, *pro hac vice*
   bserafin@winston.com
Kimberly L. Paschall, *pro hac vice*
   kpaschall@winston.com
WINSTON & STRAWN LLP
1700 K Street, NW
Washington, DC  20006
Phone:  (202) 282-5000
Fax:  (202) 282-5100

*COUNSEL FOR PLAINTIFF*


WILLIAM J. IHLENFELD, II
United States Attorney

By:   */s/ Erin K. Reisenweber*
   Erin K. Reisenweber
   Assistant United States Attorney
   217 West King Street,
   Martinsburg, WV 25401
   Phone:  (304) 262-0590
   Fax:  (304) 262-0591
   E-mail: erin.reisenweber@usdoj.gov
   COUNSEL FOR DEFENDANT